IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA REDENBAUGH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RESIDENCE INN BY MARRIOTT, ) <br> LLC, ) <br> ) <br> Defendant. ) <br> ) | No. 11 C 3174 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Residence Inn by Marriott, LLC's ("Marriott") Motion for Summary Judgment [Doc. No. 43]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Defendant's motion is granted.

## FACTS[1]

Plaintiff Barbara Redenbaugh is and was, at all times relevant to jurisdiction, a resident and citizen of Illinois, and Marriott is and was a Delaware limited liability company with its principal place of business in Maryland. (Def.'s LR 56.1(a)(3) ¶¶ 1-2.) The Court therefore has diversity jurisdiction over this negligence action pursuant to 28 U.S.C. §§ 1332 and 1441. (*Id.* ¶ 5.)

---

[1] The material facts are given in the light most favorable to Plaintiff, and all reasonable inferences are drawn in her favor. *Smith v. Sangamon County Sheriff's Dep't*, — F.3d —, 2013 WL 1688900, at *3 (7th Cir. Apr. 19, 2013). Unless otherwise noted, the material facts are either undisputed or deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000).

On May 31, 2009, Defendant operated and maintained a hotel called the Residence Inn Chicago Downtown/Magnificent Mile. (*Id.* ¶ 7.) At around 5:40 p.m. on that date, Plaintiff and her husband Steven checked into the hotel and were assigned to Room 1803, which had a kitchenette with a vinyl tile floor. (*Id.* ¶¶ 8-9.)

Upon entering the room, Plaintiff went into the kitchenette in order to put some groceries away. (*Id.* ¶ 10.) Plaintiff took two or three steps on the vinyl floor, her feet slipped out from under her, and she fell. (*Id.* ¶ 12.) Plaintiff states that she fell directly next to a table located adjacent to the kitchenette floor. (Pl.'s LR 56.1(b)(3)(C) ¶ 2.) Plaintiff did not see or feel anything wet on the floor, and her clothes were not wet after she fell. (Pl.'s LR 56.1(b)(3)(B) ¶ 11.) Plaintiff testified, however, that the floor was slick. (*Id.*) Neither Plaintiff nor her husband has any expertise or specialized training in testing floors or other walking surfaces for slipperiness. (Def.'s LR 56.1(a)(3) ¶ 45.)

Steven Redenbaugh heard Plaintiff fall and helped her off the floor and into the bedroom to rest. (*Id.* ¶ 13.) Steven then called the front desk to report the accident; the attendant responded that a maintenance person would be sent to the room. (*Id.* ¶ 14.) Jose Mendez was the maintenance worker who came to the Redenbaughs' room. (*Id.* ¶¶ 15, 17.) Steven told Mendez that the floor was slick and demonstrated that he could slide across it in his stocking feet. (*Id.* ¶ 16.) He also told Mendez that it seemed to him that someone had applied Pledge or another substance to the floor to make it slippery. (*Id.* ¶ 15; Pl.'s LR 56.1(b)(3)(C) ¶ 3.)

Mendez testified that he touched the area of the floor where Redenbaugh fell before cleaning it, and "it was normal, the same as the rest." (Def.'s LR 56.1(a)(3) ¶ 18.) Mendez cleaned the floor two times for fifteen minutes each, because after each cleaning, Steven told him it was still slippery. (Pl.'s LR 56.1(b)(3)(B) ¶ 19; Pl.'s LR 56.1(b)(3)(C) ¶ 8.) After those two cleanings, Steven demonstrated to Heneiretta Murry, the hotel's lead housekeeper, that he could still slide across the floor in his socks. Mendez then cleaned the floor a third time, and Steven could no longer slide more than a couple of feet. (Def.'s LR 56.1(a)(3) ¶ 26; Pl.'s LR 56.1(b)(3)(B) ¶ 19; Pl.'s LR 56.1(b)(3)(C) ¶ 9.)

Herminda Garcilazo is the housekeeper who had cleaned the Redenbaugh's room before they checked in. (Def.'s LR 56.1(a)(3) ¶ 21.) She testified that she cleaned the room the way she had been trained to clean every room, which included applying a cleaning chemical called "Orange Force" to the floor by putting the chemical on a rag and moving the rag around the floor with a broom. (*Id.* ¶ 22; Pl.'s LR 56.1(b)(3)(B) ¶ 22; Pl.'s LR 56.1(b)(3)(C) ¶ 10.) The Orange Force came out of a dispensing machine on the hotel's premises. (Def.'s LR 56.1(a)(3) ¶ 22.) Although employees were instructed to use aerosol furniture polish on the wood cabinets in the kitchenette, Garcilazo used a disinfectant chemical that is also obtained from the dispensing machine for cleaning the kitchenette cabinets, drawers, and counter. (*Id.* ¶ 23; Pl.'s LR 56.1(b)(3)(C) ¶¶ 14-16.) However, Garcilazo cleaned the furniture, including the table located next to the kitchenette, with the aerosol furniture polish. (Def.'s LR 56.1(a)(3) ¶ 24.) When using the aerosol cleaner, she sprayed it onto a rag

3

and then wiped the furniture with the rag; the hotel prohibits spraying the aerosol furniture cleaner directly onto furniture. (*Id.* ¶ 25.) Garcilazo did not use the aerosol spray to clean the chairs and legs of the table and instead used the disinfectant chemical. (*Id.* ¶ 24.) Garcilazo most likely cleaned the table near the kitchenette after she cleaned the kitchenette floor. (Pl.'s LR 56.1(b)(3)(C) ¶ 1.)

Murry, the lead housekeeper, randomly inspected Room 1803 after Garcilazo cleaned it and before the Redenbaughs checked in. (Def.'s LR 56.1(a)(3) ¶ 28.) During her inspection, she documented problems with dust/cobwebs on the windowsill, and dust on the bathroom vent, headboard, and pictures. (*Id.* ¶ 29.) Murry did not note any problems with the kitchenette floor. (*Id.* ¶ 30.) After Murry cleaned certain areas she noticed were deficient, Garcilazo returned to the room to dust the windowsill, and she does not recall doing anything else in the room. (Pl.'s LR 56.1(b)(3)(C) ¶ 5.)

Norman Golinkin, an engineer and architect, performed a slip-and-fall investigation of Room 1803's kitchenette floor.[2] (Def.'s LR 56.1(a)(3) ¶ 31.) He tested the slip resistance of the floor at four different locations in the area where Redenbaugh reportedly fell, using an English XL Variable Incidence Tribometer. (*Id.* ¶ 33.) He performed two different tests at each location: one "as is," after it had been cleaned following standard hotel procedures, and another after reapplication of the Orange Force cleaner. (*Id.* ¶ 35.)

The slip resistance of a floor is measured with reference to an index with values ranging from 0.0 to 1.0. A surface with a slip index of 0.5 or greater is recognized as being slip resistant and therefore considered to be a safe walking surface. (*Id.* ¶ 37.) All areas tested by Golinkin exceeded the industry standard for an appropriate walking surface, both before and after the Orange Force was reapplied. (*Id.* ¶ 40.) Golinkin also testified to a reasonable degree of architectural

---

[2] Redenbaugh objects to the admissibility of Golinkin's expert report on the basis of hearsay and lack of foundation. Generally, expert reports may not be independently admitted without violating the hearsay rule or Rule 403. *See Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705, 724 (N.D. Ill. 2009); *Sommerfield v. City of Chi.*, 254 F.R.D. 317, 329 (N.D. Ill. 2008); *Gentieu v. Tony Stone Images/Chi., Inc.*, 214 F. Supp. 2d 849, 853 (N.D. Ill. 2002). In addition, the expert report submitted as an exhibit is unaccompanied by an affidavit verifying its authenticity; it is inadmissible on that basis as well. *See Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003). The Court has therefore not considered statements of fact supported solely by reference to the expert report, as opposed to his deposition testimony.

Plaintiff also objects to the admission of Golinkin's *curriculum vitae* as hearsay and without foundation but does not argue that he is not a qualified expert in the relevant field. *See* Fed. R. Civ. P. 702. Furthermore, Plaintiff does not dispute the admissibility of Golinkin's deposition testimony, nor does she argue that Golinkin's methodology and conclusions are scientifically unsound. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

and engineering certainty that the material used in the kitchenette was an appropriate slip resistance flooring. (*Id.* ¶ 42-43.)

## DISCUSSION

I. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant

will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted). The Court is "'not required to draw every conceivable inference from the record,'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

## II. NEGLIGENCE

Plaintiff's negligence claim is governed by Illinois law in this diversity suit. *Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir. 1999). Plaintiff therefore "must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from that breach." *Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001); *see also Lucker v. Arlington Park Race Track Corp.*, 492 N.E.2d 536, 538 (Ill. App. Ct. 1986) ("Failure to prove any of the essential elements authorizes a directed verdict for the defendant.").

Under Illinois law, a business owes its invitees a "duty of exercising reasonable care in maintaining the premises in a reasonably safe condition.'" *Lane*, 184 F.3d at 707; *see Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001); *see also Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 668 (Ill. App. Ct. 2000) (noting that a business is not the insurer of the safety of its premises).

In cases involving falls due to foreign substances on a floor, "the issue of negligence should not be presented to a jury unless (1) there is evidence which

7

shows that the foreign substance was on the floor due to the acts of the defendant or its employees, or (2) there is evidence which shows that the defendant or its employees knew or should have known of the existence of the foreign substance." *Erkol v. Marshall Field & Co.*, No. 88 C 1171, 1989 WL 18248, at *2 (N.D. Ill. Mar. 1, 1989) (citing *Olinger v. Great Atl. & Pac. Tea Co.*, 173 N.E.2d 443, 445 (Ill. 1961)); *see Lane*, 184 F.3d at 707. Where a plaintiff alleges injury due to the allegedly negligent waxing or treating of floors, a business will not be liable unless it "'is shown to be negligent in the materials [it] uses or in the manner of applying them.'" *Lucker*, 492 N.E.2d at 538 (citation omitted); *see also Magallon v. The Limited Stores, Inc.*, No. 86 C 9809, 1988 WL 92695, at *2 (N.D. Ill. Aug. 31, 1988) (explaining that under Illinois law, evidence is insufficient to take to a jury where "plaintiff did not allege any specific facts tending to show defendant's negligence").

Defendant argues that Plaintiff's negligence claim must be dismissed because there is no evidence that a foreign substance was on the floor or that the floor was negligently cleaned or maintained. Plaintiff's theory of liability is that the floor was slippery, and therefore there must have been a foreign substance on the floor and the floor was not properly cleaned. (Pl.'s Resp. at 3-5.) If there was a foreign substance on the floor, the "probable source" was furniture polish. (*Id.* at 5.) The fact that the maintenance man had to clean the floor two more times before the Redenbaughs were satisfied with the floor's slip resistance "increases the probability that the substance was furniture polish." (*Id.*) The maintenance man's

8

failure to feel a substance on the floor "does not definitively prove it was not present, but rather only that he did not feel it." (*Id.* at 4.) If there was furniture polish on the floor, it could have been there because the housekeeper oversprayed while cleaning an adjacent table. (*Id.* at 4-5.) If she did overspray the table, it was "most likely after the kitchen floor had been cleaned." (*Id.* at 5.) Because the housekeeper was directed back into the room by her supervisor to dust the windowsill, "it is likely" that she would have dusted other areas as well, and thus "if [she] allowed furniture polish to fall on the kitchen floor," it would not have been detected by the supervisor, who did not return after the second cleaning. (*Id.* at 5-6.) Plaintiff's theory thus requires speculation at nearly every step.

First, Plaintiff has not offered any evidence that there actually was a foreign substance on the floor. Neither she nor anyone else who inspected the floor after the fall felt, smelled, or otherwise identified a foreign substance in the area. *Cf. Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of N.Y., Inc.*, 953 N.E.2d 427, 429, 432-33 (Ill. App. Ct. 2011) (finding a triable issue of fact as to the cause of plaintiff's fall where there was evidence of grease on the floor); *see also Lane*, 184 F.3d at 707 (standing water in restaurant bathroom); *Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998) (puddle of liquid soap) *Pavlik*, 753 N.E.2d at 1009 (puddle of hair conditioner). The testimony of Plaintiff and her husband that the floor was slippery, or even "super slick," does not create a genuine issue of material fact that there was a foreign substance on the floor. A subjective statement

"that a floor is slick, slippery or polished is insufficient to establish negligence because it does not give the trier of fact a basis for balancing the defendant's conduct against the requisite standard of care." *Lucker*, 492 N.E.2d at 538 (finding insufficient plaintiff's statements that the floor looked freshly painted, had a high gloss, was as slippery as an ice rink, and that crates were easier to move around on the floor than normal); *see also Erkol*, 1989 WL 18248, at *1 (granting summary judgment where the "only evidence for the claim that the floor was excessively waxed is based on its appearance"). Such "subjective verbal characterizations . . . are hopelessly lacking in precision of meaning and do not furnish a jury any evidence of probative value." *Lucker*, 492 N.E.2d at 538; *see Magallon*, 1988 WL 92695, at *2 ("[U]nder Illinois law, 'subjective verbal characterizations' and conclusory statements that a floor was 'shiny' or 'slippery' do not create genuine issues of material fact for trial.").

Plaintiff acknowledges that a slippery floor alone is not evidence of negligence but attempts to distinguish those cases by suggesting they hold that a business will not be liable only where the nature of the floor is slippery, but "there is no testimony regarding whether it is more slippery than it should be." (Pl.'s Resp. at 7.) She believes this case is different because "the floor was not supposed to be, but was, slippery." (*Id.*) But the cases do not say that subjective verbal characterizations are insufficient only when describing a floor as "too slippery" rather than merely "slippery." Furthermore, this distinction is illogical, as there is no indication that the nature of the flooring in cases so holding would, by their

10

nature, be any more slippery than that in a hotel kitchenette. *See Carlson v. Wal-Mart Stores, Inc.*, 06 C 4318, 2007 WL 4569867 (N.D. Ill. Dec. 21, 2007) (retailer's automotive department); *Magallon*, 1988 WL 92695, at *1 (retail clothing store); *Erkol*, 1989 WL 18248, at *1 (women's clothing section of department store); *Lucker*, 492 N.E.2d at 537 (exhibition area of racetrack); *Kotarba v. Jamrozik*, 669 N.E.2d 1185, 1187 (Ill. App. Ct. 1996) (apartment stairs); *Rarus v. J.C. Penney Co.*, 187 N.E.2d 529, 529 (Ill. App. Ct. 1963) (retail department store).

Plaintiff agrees that *Carlson* has the most closely analogous fact pattern, and a discussion of that case is illustrative. The plaintiff fell on a store floor that she, her husband, and several store employees described as slippery, but dry. *Carlson*, 2007 WL 4569867, at *1. One of the employees told the plaintiff he believed the floor had been improperly waxed by the night cleaning crew. *Id.* After the fall, the employee cleaned the area with a solvent (variously described as a "wax remover" or "adhesive spray"), allowed it to dry, and afterwards the floor was less slippery. *Id.*

In granting summary judgment, the court noted that there was no evidence of a foreign substance on the floor at all. *Id.* at *3. All of the witnesses testified that there was no substance on the floor that they could see or feel. *Id.* The court was unpersuaded by the witnesses' testimony that the floor was slippery. *Id.* at 4. The statements, while consistent, were all subjective verbal characterizations and therefore insufficient proof of negligent maintenance. *Id.* ("To summarize, there is no evidence that there was any substance on the floor where [the plaintiff] fell.

There is no competent evidence that the floor was improperly waxed or buffed, or that it was waxed or buffed at all.").

According to the court, the fact that the floor was less slippery after the solvent was applied to the floor did not prove that it was more slip resistant due to the removal of an abundance of wax, as opposed to the effect of having the dried liquid on the floor. *Id.* at 3. In addition, the employee's "guess" that the floor had been overwaxed did not prove the plaintiff's claim of negligent waxing, as he had no direct knowledge of the methods the crew used to wax, nor did he have the expertise to know what proper waxing and buffing would look like. *Id.* at 4.

Plaintiff argues that her claim is distinguishable from *Carlson* because "[i]n this case there is proof that there was a foreign substance on the kitchen floor that made it slippery and we know that the substance should not have been there." (Pl.'s Resp. at 7.) But Plaintiff's only "proof" that there was a foreign substance is subjective testimony that the floor was slippery, but it was less so after being scrubbed several more times. That is not sufficient evidence to present a triable issue of fact for a jury.

Plaintiff seeks to bolster her testimony about the floor's slipperiness with the expert witness's testing evidence, which showed that after being cleaned according to established hotel procedures, the floor's slip resistance at four different testing areas was above the industry standard of 0.5. According to Plaintiff, Golinkin's testimony demonstrates that when cleaned properly, the floor is not slippery. Conversely, because the floor was slippery, it had not been cleaned properly at the

time of the accident. Setting aside the fact that this argument is premised on her subjective characterization of the floor, it suffers from another flaw as well. Plaintiff has not shown that the cleaning preceding Golinkin's first stage of testing (*i.e.,* pursuant to normal procedures) was in any way different from the method used by Garcilazo before the Redenbaughs checked in. Redenbaugh acknowledges that the housekeeping training guide says nothing about the proper method of cleaning the kitchenette floor. Thus, there is no evidence in the record about the cleaning method used before the Golinkin test began and whether it differed in any way from that used by Garcilazo the date of the accident. That Garcilazo's method (applying cleaner to a rag and wiping it on the floor using a broom) was not in accordance with the proper procedure for cleaning bathroom floors[3] does not prove her method was insufficient to clean the kitchenette floor. Moreover, Plaintiff's suggestion that the floor was more slippery the date of the accident than it was during Golinkin's testing is pure speculation without proof.

Even if the Court were to presume that there was a foreign substance on the floor, Plaintiff has not offered any evidence that it was furniture polish. Garcilazo testified that she cleaned the floor with Orange Force; that she did not use furniture polish on the cabinet doors or any other surfaces in the kitchenette; that before cleaning the adjacent tabletop, she sprayed the furniture polish on a rag, not

---

[3] Plaintiff's evidence that the floor was not cleaned well was a training video demonstrating the proper cleaning of a bathroom floor, which is on hands and knees, with a hand rag. (Pl.'s LR 56.1(b)(3)(C) ¶ 11.) There is no training video guide or demonstrating the proper cleaning of a kitchenette floor. (*Id.* ¶¶ 11, 22.)

13

directly on the table surface; and that she cleaned the table legs and chairs with the disinfectant. Plaintiff offers only a what-if scenario, *i.e.,* that Garcilazo must have improperly cleaned the floor or sprayed polish on the floor after she cleaned it, for which there is no evidence in the record. *See Erkol*, 1989 WL 18248, at *2 (finding no genuine issue of fact sufficient to withstand summary judgment where plaintiff did not present "evidence of the identity of the foreign substance or how it got on the floor").

Finally, even if Plaintiff had proven that Defendant breached a duty to her, she has not offered any evidence that such a breach proximately caused her injury. Illinois courts have "refused to find proximate cause where the plaintiff cannot prove whether he or she actually stepped in the foreign substance." *Erkol*, 1989 WL 18248, at *2-3 ("[T]he plaintiff's claim fails if 'no further evidence is offered other than the presence of the substance and the occurrence of the injury.'"). "Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury." *Kimbrough v. Jewel Cos., Inc.*, 416 N.E.2d 328, 331 (Ill. App. Ct. 1981) (finding summary judgment proper where plaintiff did not know why she fell, and although she saw something resembling grease in the area, she did not know what it was, whether it was slippery, or whether she had stepped on it). "[I]t is not enough for a plaintiff to show that he or she fell on the defendant's flooring. The plaintiff must go further and prove that some condition caused the fall and that this condition was caused by the defendant." *Id.* at 332.

The Court therefore finds that there is no genuine issue of material fact supporting Plaintiff's negligence claim, and therefore summary judgment must be granted.

## CONCLUSION

For the foregoing reasons, Defendant Residence Inn by Marriott, LLC's Motion for Summary Judgment [Doc. No. 43] is granted, and Plaintiff's complaint is dismissed with prejudice.[4]

SO ORDERED.                                        ENTERED:

DATE:   May 10, 2013                               _____
                                                   HON. MARIA VALDEZ
                                                   United States Magistrate Judge

---

[4] Paragraphs 3-4 of Defendant's LR 56.1 statement indicate that other entities originally named in the complaint, namely Marriott International, Inc., Marriott Hotel Services, Inc., Hospitality Properties Trust, and Residence Inn Chicago Downtown/Magnificent Mile were dismissed by stipulation on August 9, 2011. A review of the stipulation and order of dismissal of those defendants reveals that Residence Inn Chicago Downtown/Magnificent Mile was not named in either document. (In addition, according to Defendants' answer, Residence Inn Chicago Downtown/Magnificent Mile is not a legal entity.) Plaintiff concedes in her response to Defendant's statements of fact that the movant is the only remaining defendant in the matter, and thus the failure to include Residence Inn Chicago in the stipulation appears to be a scrivener's error. Accordingly, any and all claims against Residence Inn Chicago Downtown/Magnificent Mile are dismissed with prejudice.